IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–03143–WJM–KMT

JTS CHOICE ENTERPRISES, INC.,

     Plaintiff,

v.

E.I. DU PONT DE NEMOURS AND COMPANY,
METRO PAINT SUPPLIES, INC., and
AUTOMOTIVE COATINGS & EQUIPMENT, LLC,

     Defendants.

---

**ORDER**

---

     This matter is before the court on "Defendants Metro Paint Supplies, Inc. and

Automotive Coatings & Equipment, LLC's Motion in Support of its Highly Confidential

Document Designations" ("Mot.") [Doc. No. 95] filed October 2, 2012.  Plaintiff filed a

Response on October 26, 2012 ("Resp.") [Doc. No. 103], and Defendants filed a Reply on

November 13, 2012 [Doc. No. 119].

     The parties entered into a Protective Order [Doc. No. 90].  In addition to the ability to

designate documents produced in discovery as "Confidential," anticipating protection from

public purview,[1] the parties also provided for an even more restrictive confidentiality

designation, which they called "Highly Confidential Material."  The Protective Order provides:

> 2. Highly Confidential Material: Any material that is CONFIDENTIAL as
> described in paragraph 1[material which can be confidential material]  that a party
> or nonparty believes should generally not be disclosed to a director, officer or
> employee of another party may be designated as HIGHLY CONFIDENTIAL.
> The parties contemplate that HIGHLY CONFIDENTIAL material shall include,
> inter alia, competitively sensitive financial data, current agreements with jobbers,
> distributors, and customers of jobbers and distributors, current and future business
> plans, and marketing plans and information.

[*Id*. at 2.]  The Protective Order further provides that Highly Confidential Material can only be

disclosed by the Receiving Party to (a) outside counsel at a law firm of record, including staff,

(b) court reporters, interpreters, translators, copy services and database/coding services retained

by and providing services for counsel, (c) certain experts or consultants, (d) a person who

prepared received, or reviewed the material prior to its production, (e) the Court, (f) in-house

counsel employed by the Receiving Party, and (g) others as allowed by court order. [*Id*. at 6-7.]

The practical ramifications of a "Highly Confidential" designation is that the representatives of

---

[1] The provisions of a Protective Order apply only to conduct of the parties and their counsel unless one or more parties seeks to utilize the confidential document in a public court filing.  Pursuant to D.C.COLO.LCivR 7.2B public access to a document which the parties agree is confidential nontheless may only be restricted if the party requesting restriction satisfies the provisions of Rule 7.2 through the filing of a proper motion.  "[S]tipulations between the parties or stipulated protective orders with regard to discovery, **alone**, are insufficient to justify restricted access."  D.C.COLO.LCivR 7.2B.2 (emphasis added).

the companies involved in the litigation may not view the document or assist the attorney with the meaning of the document in the context of the allegations at issue in the litigation.[2]

Defendants have designated a number of documents as highly confidential, claiming that the disputed documents contain detailed technical and commercial information exposing the very heart of their business, including their business methods and approach to financing and investments, internal workings and competitive strategy, the identity and methods of analysis utilized by outside vendors, marketing and pricing plans, long term plans and forecasts, customer information and pricing, finances, customer agreements, inventory sheets and customer inventory, accounts receivable reports, billing information, and other vital competitive information.  (*See* Defendants' list of documents designated highly confidential, Mot., Ex. 4, [Doc. No. 95-4] and the highly confidential documents submitted for *ex parte* review [Doc. No. 98] filed with restriction level 3.)  Plaintiff opposes this restrictive designation, stating that the documents are made up of weekly plans some of which have been released without any confidential markings at all, taxable total documents of which many of the same type of documents have been produced with only "confidential" protection, and customer rebate information that is critical to Plaintiff's claims in the case. [Resp. at 7-8.]

The burden is on the party resisting discovery or dissemination to establish that the information sought should be subject to additional protection.  *In re Michael Wilson & Partners,*

---

[2] The provisions of the Protective Order at issue here do not create a true "attorneys eyes only" condition for highly confidential documents since there are a number of other categories of persons allowed to view the material including experts, analysts and in-house counsel.

*Ltd.*, Case No. 06-cv-02575-MSK-KLM, 2007 WL 3268475, at *2 (D. Colo. October 30, 2007) (citing *Reed v. Nellcor Puritan Bennett & Mallinckrodt*, 193 F.R.D. 689, 690 (D. Kan. 2000)). To meet this burden, the moving party must set forth specific facts showing good cause, not simply conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Thus, Plaintiff must do more than simply allege that the documents are proprietary and confidential. *S.E.C. v. Misner*, Case No. 07-cv-01640, 2007 WL 3232132, at *3 (D. Colo. Oct. 30, 2007) (citing *Reed*, 193 F.R.D. at 691). In determining the proper level of protection, the Court must balance the requesting party's need for the discovery against the resisting party's claimed harm that will result from disclosure. *Centurion Indus., Inc. v. Warren Steurer. & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981); *A Major Difference, Inc. v. Wellspring Products, LLC,* 243 F.R.D. 415, 416 (D. Colo. 2006). Confidential information that may be used against a company by a direct competitor in the lawsuit is generally afforded the maximum protection. *See In re Michael Wilson & Partners, Ltd.*, at *3; *Netquote, Inc. v. Byrd*, 07-cv-00630-DME-MEH, 2007 WL 2438947, at *1-2 (D. Colo. Aug. 23,2007) (citing *A/R Roofing, L.L.C. v. Certainteed Corp.*, No. 05-1158-WEB, 2005 WL 6794228, at *3 (D. An. Dec. 5, 2005) (finding that disclosure of information that could place one party at a disadvantage in the marketplace supported an attorney-eyes-only provision). *See also Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866 (E.D. Pa. 1981) ("Competitive disadvantage is a type of harm cognizable under rule 26.").

The heart of the dispute in this case is that JTS and Metro Paint Supplies, Inc. and Automotive Coatings & Equipment, LLC, (collectively "Metro/Ace') were DuPont's

wholesalers, often referred to as "jobbers," and that DuPont for many years prohibited its wholesalers from 'poaching' one another's clients. According to the Second Amended Complaint ("Second Am. Compl.")[Doc. No. 100], DuPont actively prohibited its wholesalers from competing with one another upon threat of being cut out of the program by DuPont. [*Id.* at 8.] DuPont's wholesalers were encouraged to actively pursue <u>only</u> those retail establishments that were not already using DuPont products, so the competition between such DuPont wholesalers themselves was extremely limited. JTS's allegations are that at some point DuPont started favoring Metro/Ace over JTS and actively awarded Metro/Ace rebates and other monetary incentives that allowed Metro/Ace to not only compete more favorably for non-DuPont customers, but that DuPont allowed and encouraged Metro/Ace to poach JTS's customers while at the same time forbidding JTS from the same behavior toward Metro/Ace customers. [*Id.* at 11.]

Joseph Schweid, one of the principals of JTS, had done business with DuPont since 1990 when JTS became an exclusive dealer of DuPont's Coatings, a period of some nineteen years prior to the entry of Metro/Ace into the Colorado market selling DuPont products. (*See* Declaration of Joseph Schweid [Doc. No. 35-1] and Second Am. Compl. at 5-6.) The court therefore infers that Mr. Schweid was very knowledgeable about DuPont's business methods, at least to the extent DuPont was dealing with jobbers such as JTS, the rewards its wholesalers would give to potential customers of DuPont products, and the incentives which wholesalers might give to its customers during that period of time. He was also very familiar with the way

the methods changed upon the entry of Metro/Ace into the Colorado market. [*See* Second Am. Compl., Exs. 2-6.]

On June 20, 2011, JTS entered into an asset sale with National Coating and Supplies ("NCS"), a DuPont competitor. [Doc. No. 58-1.] The sale closed on June 22, 2011. [Doc. No. 37-1 ¶ 2.] The documents that consummated the sale were an Asset Purchase Agreement and a Bill of Sale. [Doc. No. 58-1.][3] Much of the instant motion obtains its thrust from the underlying assumption that JTS is a competitor with DuPont, Metro and ACE, making disclosure of certain kinds of documents and information worthy of protection from disclosure to the principals of the organizations.

Joseph Schweid claims, "JTS continues to be in business. As part of NCS asset sale, the two principals of JTS, myself and my brother Steven Schweid, entered into non-competition agreements with NCS. JTS still is very much in business, but it is pursuing opportunities in fields that will not cause my brother or I to be in violation of the non-competition agreements." (Decl. of Joseph Schweid [Doc. No. 37-1], ¶ 6.) It appears to this court that since NCS is a competitor of Defendants and the brothers Schweid have entered into non-compete agreements with NCS, Plaintiff JTS cannot be a direct competitor with the Defendants. Nevertheless, Metro/ACE claims that allowing Mr. Schweid to view the highly confidential documents would put

---

[3] The District Court has found that the Purchase Agreement was ambiguous as to whether JTS retained the right to bring this lawsuit but ultimately found that Plaintiff did not intend to assign its right to bring the claims at issue in the case to National. Therefore, the court found standing on behalf of Plaintiff to bring the lawsuit and denied the Defendant's Motion to Dismiss based on lack of subject matter. (*See* Order dated Jan. 15, 2013 [Doc. No. 139] at 8-9.)

defendants at a competitive disadvantage.  Although the Defendants allege Mr. Schweid is an employee of NCS, he states in his Declaration, "My employment with NCS ended in December 2011." [Doc. No. 37-1 at ¶ 9.]

The court finds that to deprive Mr. Schweid from viewing the very documents which are at the heart of the alleged antitrust scheme alleged by JTS, in light of his long association with DuPont and ownership of JTS, would seriously cripple Plaintiff's ability to present its case.

Documents containing the highly confidential designation but predating June of 2011 are now antiquated.  DuPont's business model was apparently, at least according to the allegations in the Complaint, undergoing significant changes in the way wholesalers in one market were allowed to compete against one another beginning in 2009.  Therefore, the documents which reflect the prior way of doing business–*e.g.*, that "jobbers" would be penalized by DuPont if they tried to disadvantage another DuPont jobber–and the change that was allegedly occurring when Metro/Ace entered the Colorado market allegedly at the behest of DuPont, are not only highly relevant to the issues in this case, they also have little to do with the current competitive practices of DuPont and its wholesalers.

As a general rule, business information that is substantially out of date is unlikely to merit protection under Rule 26(c).  A party seeking to protect outdated information must make a specific showing of present harm.  "While staleness of the information sought to be protected is not an absolute bar to issuance of an [protective] order, it is a factor which must be overcome by a specific showing of present harm." *Q-Tech Laboratories Pty Ltd. v. Walker,* 01-cv-1458-REB-CBS, 2002 WL 1331897, at *15 (D. Colo. June 4, 2002) (quoting *Deford v. Schmid Products*

*Co., a Div. of Schmid Laboratories, Inc.*, 120 F.R.D. 648, 654 (D. Md. 1987). *See also, Zenith Radio Corp.*, 529 F. Supp. at 891 ("An attempt to show that disclosure will indeed work a competitive disadvantage might be undermined if the information sought to be protected were stale."). The very nature of the documents marked highly confidential but pre-dating the sale of JTS to NCS is therefore is less secretive. It appears to the court that a designation of "Confidential" would adequately protect this category of documents from dissemination to the public or to any competitor, and at the same time allow Mr. Schweid to actively and effectively participate in the litigation with his counsel.

Documents post dating June of 2011, however, are deserving of more protection, as NCS is an active competitor of DuPont and Metro/Ace. Further, documents post dating the sale of JTS to NCS are significantly less relevant to any issue in the case with the exception of damages.

The court has reviewed the documents submitted under restriction level 3 [Doc. No. 98]. Mindful that creating a restriction on disclosure of information that hinders a party in preparation and presentation of its case must be balanced against the need to protect competitive business information on the other, *see Innovatier, Inc. v. Cardxx, Inc.*, 08cv-00273-PAB-KLM, 2008 WL 4889867, at *2 (D. Colo. Nov. 13, 2008), the court finds there is no document contained therein that dissuades the court from utilizing the June 22, 2011, date as the yardstick to determine when a document qualifies for the highly confidential designation.

Therefore, it is **ORDERED**

"Defendants Metro Paint Supplies, Inc. and Automotive Coatings & Equipment, LLC's Motion in Support of its Highly Confidential Document Designations" [Doc. No. 95] is

**GRANTED in part** and **DENIED in part**.  Documents contained in restricted filing Doc. No. 98 which are dated June 22, 2011, and later shall retain the "Highly Confidential" designation and be protected from disclosure as outlined in the Protective Order.  Documents contained in restricted filing Doc. No. 98 dated at any time prior to June 22, 2011, will be re-designated as "Confidential" pursuant to the Protective Order and shall be produced to Plaintiff accordingly within five days of the entry of this Order.

Dated this 4th day of March, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge