**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-03143-WJM-KMT

JTS CHOICE ENTERPRISES, INC.,

    Plaintiff,

v.

E.I. DUPONT DE NEMOURS AND COMPANY,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**
**PURSUANT TO F.R.C.P. 59(e)**

---

    Plaintiff JTS Choice Enterprises ("Plaintiff") brings this action against Defendant E.I. DuPont De Nemours and Company ("Defendant" or "DuPont") alleging that Defendant engaged in anticompetitive actions that violated various federal and state laws. (Sec. Am. Compl. ("SAC") (ECF No. 100) pp. 17-28.) On February 26, 2014, the Court entered an Order denying Plaintiff's Motion for Partial Summary Judgment and granting Defendant's Motion for Summary Judgment ("SJ Order") (ECF No. 467). Before the Court is Plaintiff's Motion to Alter or Amend that SJ Order ("Motion"). (ECF No. 480). For the reasons set forth below, the Motion is denied.

## I.  LEGAL STANDARD

    Plaintiff has filed the instant Motion pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 480.) "Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't*, 455 U.S. 445, 450 (1982) (internal

quotation marks and brackets omitted). Accordingly, the Court may amend the judgment in its discretion to correct clear error, including a misapprehension of the controlling law, or to prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

A Rule 59(e) motion "cannot be used to advance [new] arguments that could have been raised in prior briefing." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008); *see also GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) ("Rule 59(e) motions are aimed at reconsideration, not initial consideration.") (internal quotations omitted). It also cannot be used to expand an argument to encompass new issues that could have been raised prior to entry of judgment. *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993) ("Rule 59(e) cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment."). Finally, Rule 59(e) does not permit a party to rehash arguments that were previously addressed. *Servants of the Paraclete*, 204 F.3d at 1012 (holding that a party moving to reconsider a prior ruling should not "revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

As the Court has yet to enter judgment, Rule 59(e) does not technically apply to this case. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days *after* the entry of the judgment.") (emphasis added). However, the United States Court of Appeals for the Tenth Circuit has recognized that a district court has broad discretion to reconsider its interlocutory rulings before the entry

of judgment. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."). That discretion extends to rulings on summary judgment motions that resolve less than the entire case. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223-24 n.2 (10th Cir. 2008).

Because judgment has yet to be entered in this case, the Court may apply a less stringent standard than that applicable to a Rule 59(e) motion. *See Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000). However, "[n]otwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Id*. (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id*. Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id*.

## II. ANALYSIS

Plaintiff's Second Amended Complaint brought anti-trust claims under the Sherman Act and the Clayton Act, and state law claims for common law fraud, breach of the duty of good faith and fair dealing, and a violation of the Colorado Consumer Protection Act. (ECF No. 100.) The Court granted summary judgment in Defendant's favor on all claims. (ECF No. 467.) However, in the instant Motion, Plaintiff seeks

reconsideration of only those portions of the Court's SJ Order that relate to Plaintiff's claims for fraud and breach of the duty of good faith and fair dealing. (ECF No. 480.) Thus, the Court will discuss only those portions of the SJ Order.

**A.  Fraud Claim**

Plaintiff contends that, in granting summary judgment for Defendant, the Court failed to recognize disputed material facts, misconstrued Plaintiff's arguments, and caused manifest injustice to Plaintiff. (ECF No. 480 at 15.) In response, Defendant contends that Plaintiff is attempting to reargue deficient fraud theories or raise new theories that were not previously briefed. (ECF No. 486 at 4.) The Court will address Plaintiff's arguments below.

1.  <u>Agency Theory</u>

Plaintiff first contends that it can prevail on its fraud claim—even in the absence of evidence showing that Mr. Fallows was aware that his statements were false—through the agency doctrine. (ECF No. 480 at 16-18.) Specifically, Plaintiff contends that Mr. Fallows was not required to be aware that his statements were false so long as DuPont executives knew that Mr. Fallows was providing false information. (*Id*.)

This agency theory of liability was not raised in Plaintiff's affirmative Motion for Summary Judgment or in Plaintiff's opposition to Defendant's Motion for Summary Judgment. (*See* ECF Nos. 350 & 370.) Plaintiff's prior briefing did not cite the sources it now quotes, and did not argue that DuPont could be held liable for innocent acts of its agents. (*Id*.) As it was Plaintiff's burden to show that summary judgment was not

appropriate, and Plaintiff chose not to make this argument in either its response to Defendant's Motion or in its affirmative summary judgment motion, the Court will not permit Plaintiff to raise this new argument in the instant Motion. *See Snowden v. Connaught*, 138 F.R.D. 138, 139-40 (D. Kan. 1991) ("[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider.")

Accordingly, the Court declines to consider whether Plaintiff could have prevailed on summary judgment under the agency theory.

2. Knowledge of Assistance via Empowerment Dollars Account

Plaintiff next argues that it has presented evidence that "directly contracts" the Court's prior findings of fact, and which establishes that it can prevail on the fraud claim. (ECF No. 480 at 20.) In its affirmative Motion for Summary Judgment, Plaintiff argued that Mr. Fallows knowingly stated that he did not know where Metro was getting the money to offer deep discounts to Plaintiff's customers, and that such money did not come from DuPont. (ECF No. 350 at 25.) The Court found that these statements were false because DuPont admitted that it had guaranteed a loan for Metro. (ECF No. 467 at 14-15.) However, the Court found that these false statements could not support a fraud claim because Mr. Fallows did not know about the loan payments, so he did not know his statements were false. (*Id*.)

In the instant Motion, Plaintiff points to evidence showing that Mr. Fallows had access to Metro's Empowerment Dollars account and was tasked with meeting with Metro to review how Metro was using those Empowerment Dollars, so he knew about the additional Empowerment Dollars that DuPont was providing to Metro. (ECF No.

5

480 at 20.) Plaintiff therefore argues that it has presented evidence from which a reasonable juror could find that Mr. Fallows knew that DuPont was to Metro money that Metro was using to solicit Plaintiff's customers. (*Id*.)

Notably, in its affirmative Motion for Summary Judgment, Plaintiff did not cite any of this evidence in support of its argument that Mr. Fallows made knowingly false statements. (ECF No. 350 at 27.) In that brief, Plaintiff argued only that "Mr. Fallows affirmatively told [Plaintiff] that DuPont had not given Metro any funding, with knowledge that he had not been apprised of the details of the sale and in fact did not know whether DuPont had provided any funds to Metro." (*Id*.) This argument suggested that DuPont could be held liable for fraud because Mr. Fallows made false statements, despite the fact that Mr. Fallows did not know his statements were false. The Court rejected this argument in its SJ Order. (ECF No. 467 at 15.) Plaintiff's Motion for Summary Judgment did not argue that Mr. Fallows was aware of DuPont providing additional Empowerment Dollars to Metro, or that Mr. Fallows had made misrepresentations about any money other than the funds Metro used to acquire DCC. (ECF No. 350 at 27.) Thus, Plaintiff failed to put this specific evidentiary fact at issue in its affirmative Motion for Summary Judgment.

Additionally, in opposing Defendant's Motion for Summary Judgment, Plaintiff failed to make any argument regarding Mr. Fallows's knowledge of additional Empowerment Dollars that were provided to Metro. (ECF No. 370 at 31-33.) Instead, Plaintiff simply cross-referenced its own Motion for Summary Judgment which, as noted above, did not address this issue. (*Id*. at 33.) Thus, despite bearing the burden of showing a triable issue of disputed fact, Plaintiff failed to properly raise this issue in its

prior briefing.

The failure to raise this argument alone is sufficient basis to deny the Motion to Reconsider. However, even considering the evidence Plaintiff now cites, the Court sees no reason to reconsider its prior ruling. Plaintiff alleged that DuPont was liable for fraud because Mr. Fallows repeatedly informed Plaintiff that he did not know where Metro was getting the money to offer such deep discounts to Plaintiff's customers. (ECF No. 350 at 25.) The emails Plaintiff quotes in the instant Motion do not show that these statements were false. Rather, these emails are communications between Mr. Fallows, his superiors at DuPont, and representatives from Metro discussing how DuPont could support Metro's efforts to solicit *new* customers—*i.e.*, customers that were currently using competing paint lines—including providing additional Empowerment Dollars. (*See* ECF No. 480-29 & 480-31 (referencing Metro's attempts to win over a customer that had previously been using BASF/FM paint).) These emails do not show that DuPont was providing Metro with additional Empowerment Dollars that Metro was using to lure Plaintiff's customers into changing jobbers. As such, even considering the new argument Plaintiff raises in the instant Motion, Plaintiff has not shown that summary judgment on its fraud claim was inappropriate.

    3.    <u>Intent to Fulfill Promises to Stop Metro's Poaching</u>

Plaintiff next argues that the Court made erroneous factual findings in conjunction with Mr. Fallows and Mr. Garcia's intent to fulfill their promises to assist Plaintiff. (ECF No. 480 at 20-21.) The Court previously found that "Plaintiff has failed to point to any evidence showing that, at the time the disputed statements were made, Messrs. Fallows and Garcia did not intend to fulfill the promises that they made to

Plaintiff regarding their future conduct." (ECF No. 467 at 17.) Plaintiff now contends that this finding ignored evidence in the record. (ECF No. 480 at 22-23.)

As with previous arguments, the degree to which Plaintiff's argument in the instant Motion differs from its prior briefing is astonishing. In its affirmative Motion for Summary Judgment, Plaintiff argued that it could prevail on its fraud claim because DuPont's regional managers, Messrs. Fallows and Garcia, were assuring Plaintiff that they were doing everything they could to stop Metro from poaching customers, but that DuPont's national management team was undermining these efforts. (ECF No. 350 at 26-27 ("Despite any efforts made by the District Managers to control Metro, DuPont's national managers continued to encourage Metro's behavior and never had the intent to prevent Metro from soliciting JTS's customers."); ECF No. 395 at 18 ("DuPont cannot escape liability for [Mr. Fallows's] promises to stop Metro, because those promises were coupled by a present intent by certain of its national managers not to stop Metro.").) Plaintiff cited evidence showing that Messrs. Fallows and Garcia's efforts to stop Metro from poaching its customers were ineffective, but blamed DuPont's upper management rather than the district managers. (*Id.*)

Having failed to prevail on that theory, Plaintiff changes course in the instant Motion and attempts to blame Messrs. Fallows and Garcia. (ECF No. 480 at 22-23.) Plaintiff claims that their statements that they would "do everything they could" to stop Metro from taking Plaintiff's customers were fraudulent because there is evidence showing that Messrs. Fallows and Garcia had other tools at their disposal that they could have used to punish Metro. (*Id.* at 22.)

Even if the Court were to consider this newly raised argument, Plaintiff's claim in

this regard suffers the same fatal flaw it did in the prior briefing.  None of the evidence Plaintiff cites shows that Messrs. Fallow or Garcia had the present intent not to fulfill their promises at the time such promises were made.  As such, these promises cannot form the basis for a fraud claim. *Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo. Ct. App. 2005) (holding that a promise to do something in the future is not actionable "[u]nless the speaker making the representations deliberately falsified his or her intention to induce reliance.").  Thus, the Court sees no reason to reconsider its prior ruling.

  4. <u>Statements by other DuPont officials</u>

Plaintiff next argues that the Court's SJ Order misconstrued its position with regard to the fraud claim.  (ECF No. 480 at 24.)  Plaintiff contends that its fraud claim was not limited to statements made by Messrs. Fallows and Garcia, but that other national managers for DuPont also made fraudulent statements.  (*Id*. at 25-26.)

In its affirmative Motion for Summary Judgment, Plaintiff stated:

> In response to JTS's repeated inquiries about how Metro could afford to offer such tremendous discounts to JTS's customers, see ¶ 66, Messrs. Fallows and Garcia repeatedly told JTS (i) that DuPont did not know where Metro was getting the money to fund its discounts, (ii) that the money did not come from DuPont, and (iii) that Metro was not getting anything that JTS was not also getting.  These statements were false.

(ECF No. 350 at 25.)  Plaintiff also stated:

> Upon Metro's arrival in Colorado, Messrs. Fallows and Garcia assured JTS that there would not be a change in the market, and that they would not permit Metro to solicit JTS's customers. ¶ 59. They also told JTS that they would treat it "fairly," in that they would not do anything to give Metro a competitive edge. ¶¶ 77-78. These statements were

> false.
>
> In response to JTS's "ongoing" requests to DuPont that it stop Metro from soliciting its customers, ¶¶ 60-62, DuPont also told JTS (i) that it would stop Metro, (ii) that the problem had been addressed, and (iii) that Metro would be held accountable under the Champion Program. ¶¶ 70-71. These statements were false.

(*Id*. at 26.) The evidence cited by Plaintiff in support of these arguments (denoted by the paragraph numbers which refer to the statement of facts section of Plaintiff's brief), shows that all of the allegedly false statements cited by Plaintiff were made by either Mr. Fallows or Mr. Garcia. Thus, the only false statements specifically mentioned by Plaintiff in the prior briefing were those attributed to Messrs. Fallows and Garcia.

The party opposing summary judgment bears the burden of pointing to specific evidence in the record showing that a reasonable juror could find in its favor. *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."). This is particularly true with regard to fraud claims which, even at the pleading stage, must be identified with a heightened level of particularity. *See Midgley v. Rayrock Mines, Inc.*, 374 F.Supp.2d 1039, 1047 (D.N.M. 2005) ("To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"). The Court will not permit Plaintiff to re-cast its arguments regarding which false statements supported its fraud claims.

**B.     Breach of the Duty of Good Faith and Fair Dealing**

Plaintiff claims that the Court mischaracterized its argument regarding the basis upon which DuPont breached the duty of good faith and fair dealing. (ECF No. 480 at 27.)  Plaintiff contends that, because of this mischaracterization, the Court did not address Plaintiff's claim that DuPont improperly used the "anti-poaching" provision of the Champion Contract to prevent Plaintiff from attempting to acquire Metro's customers, while allowing Metro to pursue Plaintiff's customers. (*Id*.)

The Court disagrees that it failed to address this contention.  In fact, the Court held that, because Plaintiff was not an intended third-party beneficiary of the contract between DuPont and Metro, "Plaintiff cannot show that Defendant breached the covenant of good faith and fair dealing it owed to Plaintiff by failing to enforce the terms of its contract with Metro." (ECF No. 467 at 22.)  In the instant Motion, Plaintiff offers no evidence showing that it was a third-party beneficiary of the contract between DuPont and Metro, and fails to offer any argument showing that the Court's prior reasoning was incorrect.  Instead, Plaintiff continues to rehash old arguments, citing evidence in the record showing that DuPont could have taken additional steps to punish Metro for soliciting Plaintiff's customers. (ECF No. 480 at 28.)  As the Court has already ruled, any deficiencies with regard to how DuPont enforced the Champion Contract between DuPont and Metro cannot be pursued by Plaintiff.  Thus, the Court sees no reason to reconsider its prior ruling in favor of Defendant on Plaintiff's claim for breach of the duty of good faith and fair dealing.

**C.     Fairness and Judicial Economy**

In sum, though the Court retains the ability to reconsider interlocutory motions under a less stringent standard than that imposed by Rule 59(e), in consideration of both judicial economy and fairness to the parties, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders and consider whether new evidence or new legal authority has emerged, or whether the prior ruling was clearly in error when deciding motions to reconsider interlocutory orders.  *See, e.g., Montano v. Chao*, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion for reconsideration of interlocutory order).

In the initial round of summary judgment briefing, Plaintiff had the opportunity to respond to Defendant's Motion for Summary Judgment, and also to file its own affirmative Motion for Summary Judgment.  Plaintiff's briefing on these prior Motions totaled nearly one hundred pages of fact and argument, and was accompanied by over 150 exhibits.  (*See* ECF Nos. 350, 370 & 395.)  In these briefs, Plaintiff had the opportunity to make its best arguments, cite any relevant evidence, and rebut Defendant's contentions.  The Court considered all of both parties' submissions before entering its SJ Order.

In the instant Motion, Plaintiff has failed to cite an intervening change in the law, any evidence that was unavailable at the time of the original briefing, or any need to correct clear error or prevent manifest injustice.  Instead, Plaintiff has used the instant

Motion to rehash old arguments, reframe pre-existing evidence, and attempt to raise new arguments that could have been brought forth in its initial briefs.  The Court will not permit a Motion to Reconsider to be used as a second bite at the summary judgment apple.  *See Fye v. Okla. Corp. Comm'n*, 2006 WL 2792673, *2 (W.D. Okla. Sept. 26, 2006) ("Although the Court is free to reconsider and reverse its decision on an interlocutory order, the circumstances do not warrant such reversal.  In this case, considerations of fairness and judicial economy clearly outweigh Plaintiff's interest in getting a second (or third) bite at the summary judgment apple.").

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Amended Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) (ECF No. 480) is DENIED.

Dated this 22nd day of July, 2014.

BY THE COURT:

William J. Martinez
United States District Judge