**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-03143-WJM-KMT

JTS CHOICE ENTERPRISES, INC.,

      Plaintiff/Counter-Defendant,

v.

E.I. DUPONT DE NEMOURS AND COMPANY,

      Defendant/Counter-Plaintiff.

---

**ORDER DENYING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT ON THE AMENDED COUNTERCLAIM**

---

Plaintiff/Counter-Defendant JTS Choice Enterprises ("JTS") originally brought this action against Defendant/Counter-Plaintiff E.I. DuPont De Nemours and Company ("DuPont") alleging that DuPont engaged in anticompetitive actions that violated various federal and state laws.  (Sec. Am. Compl. ("SAC") (ECF No. 100) pp. 17-28.)  The Court has entered summary judgment in favor of DuPont on all of the original claims, and they are no longer pending in this action.  (ECF No. 467.)

On March 27, 2013, DuPont filed its Amended Counterclaims against JTS for breach of contract and unjust enrichment.  (ECF No. 174.)  Before the Court is JTS's Motion for Summary Judgment on the Amended Counterclaim ("Motion").  (ECF No. 412.)  For the reasons set forth below, the Motion is denied.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  RELEVANT FACTUAL BACKGROUND

The following factual background contains only those facts relevant to the Amended Counterclaim, and the facts are viewed in the light most favorable to DuPont.

DuPont manufactures coatings used to repaint automobiles. (SAC ¶ 8.) DuPont sells its paint products to distributors—called "Jobbers"—who then resell the products to auto body repair shops. (*Id.*) JTS was a Jobber for DuPont in the Colorado market from 1991 until 2011. (Fallows Dep. (ECF No. 350-1) pp. 34-35.)

Since 2006, DuPont has operated a loyalty-based rewards program for its Jobbers called the Champion Program. (Small Dep. (ECF No. 347-2) p. 35.) As part of the Program, Jobbers were able to gain Empowerment Dollars, which could be used to

garner new business or retain existing business by offering discounts and incentives to customers.  (ECF No. 347-11 at 13.)  JTS participated in the Champion Program and had an account of Empowerment Dollars.  (*See* ECF No. 414.)  As pertinent to this case, on February 3, 2009, JTS signed a contract to participate in the Champion Program until December 31, 2009 ("2009 Empowerment Agreement" or "2009 EA").  (*Id*.)  The 2009 Empowerment Agreement placed conditions on how Jobbers could allocate Empowerment Dollars to shops, and had penalty provisions if the contract was breached.  (*Id*.)

In 2006, JTS re-negotiated its contract with Phil Long Collision Center ("2006 Shop Contract").  (ECF No. 412-2.)  The 2006 Shop Contract required Phil Long to use exclusively DuPont paint products, and also to make minimum yearly purchases.  (*Id*.)  In exchange, JTS provided Phil Long certain equipment, as well as discounts in excess of $300,000.  (*Id*.)

On March 8, 2007, JTS and DuPont entered into a Business Investment Agreement ("BIA").  (ECF No. 412-1.)  The BIA stated that DuPont would pay JTS $300,000 to reimburse JTS for the discounts it had provided to Phil Long.  (*Id*. § 3.)  In exchange for this reimbursement, JTS agreed to purchase minimum quantities of DuPont products for the next five years.  (*Id*. § 5.)  The penalty provisions of the BIA provided that, in the event Phil Long changed to a competitor's paint, JTS would pay DuPont liquidated damages of $300,000.  (*Id*. § 6.)  The BIA also stated that, if JTS sold its business, it would immediately pay DuPont $300,000.  (*Id*. § 7.)

On June 10, 2009, JTS executed a new shop contract with Phil Long ("2009

Shop Contract").  (ECF No. 412-8.)  To secure the 2009 Shop Contract, JTS made a $100,000 investment in Phil Long by way of two checks, each for $50,000.  (ECF No. 412-19.)  DuPont subsequently deposited $100,000 in Empowerment Dollars (in two installments of $50,000) into JTS's account.  (ECF Nos. 429-7, 429-8.)

In March 2011, Phil Long stopped using DuPont products and changed to a competing paint line.  (ECF No. 412-5 at 32.)  JTS and Phil Long thereafter agreed that Phil Long would pay $390,000 to JTS, and such payment was made on May 6, 2011.  (ECF No. 430-11.)  JTS has refused to pay to DuPont any of the funds it received from Phil Long or to repay any of the money it received under the BIA.

## III.  ANALYSIS

DuPont's Amended Counterclaims bring three causes of action: (1) breach of contract arising out of the BIA; (2) breach of contract arising out of the 2009 Empowerment Agreement; and (3) unjust enrichment.  (ECF No. 174.)  JTS moves for summary judgment on each claim.  (ECF No. 412.)

## A.    Breach of Contract

It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements:  (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  The Court will separately address whether DuPont has shown a genuine dispute of fact as to each of its breach of contract claims.

    1.    <u>Business Investment Agreement</u>

With regard to the BIA, JTS argues that DuPont's claim is untimely, and that JTS has fully performed its obligations under the contract such that there was no breach. (ECF No. 412 at 7-16.)

    a.    *Timeliness of the Claim*

JTS contends that the general three-year statute of limitations applies to DuPont's breach of contract claim and that such claim is time barred because DuPont was aware of any breach no later than 2009.  (ECF No. 412 at 7.)  DuPont argues that the six-year statute of limitations applicable to claims for liquidated damages applies, which makes all of its claims timely.  (ECF No. 430 at 19.)

Colorado Revised Statute § 13-80-101 provides, in relevant part:

> (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter:
>
> (a) All contract actions, including personal contracts and actions under the "Uniform Commercial Code", *except as otherwise provided in section 13-80-103.5.*

*Id*. (emphasis added).  Section 13-80-103.5 states:

> (1) The following actions shall be commenced within six years after the cause of action accrues and not thereafter:
>
> (a) All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt, and all actions of replevin to recover the possession of personal property encumbered under any instrument securing any debt.

"An amount is liquidated or determinable for purposes of § 13-80-103.5(1)(a) if the

amount due is ascertainable by reference to an agreement or by simple computation, even if reference must be made to facts external to the agreement." *Neuromonitoring Assoc. v. Centura Health Corp.*, __ P.3d __, 2012 WL 3518017, *3 (Colo. App. Aug. 16, 2012).

DuPont's Counterclaim states that it is seeking "liquidated damages in the amount of $300,000" based on ¶ 6 of the BIA. (ECF No. 174 at 8.) Paragraph 6 of the BIA provides that, should certain enumerated events occur, "Jobber shall immediately pay DuPont liquidated damages in the amount of Three Hundred Thousand Dollars ($300,000). . . . These liquidated damages are in addition to attorney's fees, court costs, interest and other costs reasonably related to the enforcement of payment of the liquidated damages, should such enforcement be necessary." (ECF No. 174-1 at 3.) JTS agrees that the first clause of ¶ 6 of the BIA fixes the amount due should a breach of contract occur. (ECF No. 443 at 9-10.) However, it argues instead that the subsequent provision which allows DuPont to seek attorneys' fees and costs causes this claim to fall outside of § 13-80-103.5(1)(a). (*Id.*)

Notably, JTS cites no authority which holds that a provision allowing the recovery of attorneys' fees and costs—which are subsidiary damages typically awarded by the Court after the jury decides liability—makes a contractual provision that plainly sets the amount of liquidated damages uncertain enough to fall outside of § 13-80-103.5(1)(a). Given the fact that the BIA plainly sets the amount of damages, and DuPont's breach of contract claim seeks the specified amount, the Court has little difficulty concluding that DuPont's claim falls under § 13-80-103.5(1)(a). *See Neuromonitoring Assoc.*, 2012 WL 3518017 at *3.

6

The Court therefore finds that the six-year statute of limitations applies to JTS's breach of contract claims, and such claims are timely.

           b.    *Performance*

DuPont's Counterclaim asserts that, under ¶ 7 of the BIA, JTS was required to pay it $300,000 in liquidated damages when it sold its company in June 2011.  (ECF No. 174 at 8.)  JTS moves for summary judgment on this claim, arguing that it fully performed on the BIA prior to selling its business, such that there was no breach.  (ECF No. 412 at 11.)

The parties' dispute centers on the minimum purchase requirements set forth in ¶ 5 of the BIA:

> In further consideration of DuPont's Investment, Jobber agrees that each calendar year for the next five years it shall purchase an annual minimum amount of liquid paint products from DuPont in the amount of Three Million Four hundred Fourteen Thousand Six Hundred Seventy-Seven Dollars ($3,414,677), representing an annual increase of One Hundred Ninety-Five Thousand Dollars ($195,000) over its 2006 purchases of liquid paint products from DuPont. The total amount Jobber shall purchase from DuPont by December 31, 2011 shall be Seventeen Million Seventy-Three Thousand Three Hundred Eighty-Five Dollars ($17,073,385).

(BIA ¶ 5.)

JTS contends that DuPont's own records show that JTS had purchased more than $17,073,385 as of December 31, 2010, six months before JTS sold its business in June 2011.  (ECF No. 412 at 13.)  Thus, JTS contends that it fulfilled the quota of product it was required to buy, such that the contract was satisfied and could not have been breached.  (*Id.*)

7

JTS's argument, however, ignores the BIA's requirement that JTS purchase $3,414,677 *each year* between January 1, 2007 and December 31, 2011.  (BIA ¶ 5.) JTS admits that it purchased only $1,777,878.90 in product between January 1, 2011 and the time it sold the business in June 2011.  (ECF No. 412 at 13 n.6.)  Were the Court to hold that JTS's total purchases between January 1, 2007 and December 31, 2010 completely satisfied its obligations under the contract, it would render meaningless the minimum annual purchase provision.  The Court is not permitted to interpret a contract in this manner.  *See Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App. 2002) ("A contract is to be interpreted in its entirety to harmonize and to give effect to all provisions, if possible.").  Because DuPont has shown a dispute of fact as to whether JTS satisfied its annual purchase requirement under the BIA, the Court finds that summary judgment is not appropriate.

Moreover, even if the Court were to agree that JTS could satisfy its obligations under the BIA simply by purchasing $17,073,385 in product anytime after January 1, 2007, the Court finds that there is a dispute of fact as to whether JTS met that purchase requirement.  JTS contends that it did, based on DuPont's sales figures under the Empowerment Program.  (ECF No. 412 at 13.)  DuPont claims that JTS has misused the sales figures, and that "indirect sales"[1] do not count towards JTS's purchase quota. (ECF No. 430 at 22.)  The BIA does not specifically address whether indirect sales

---

[1] Indirect sales are those in which DuPont negotiates the sale directly with the end-use customer, the end-use customer places the order directly with DuPont, and the end-use customer pays DuPont directly.  DuPont then transfers the order to a servicing jobber—such as JTS—who fills the order with product that it has on hand.  The jobber then receives a credit from DuPont to replenish their stock in the amount of the indirect sale.

count towards the quota, and the Court finds that this dispute of fact makes summary judgment inappropriate.

### c. *Phil Long's Conduct*

DuPont alleges that ¶ 6 of the BIA required JTS to pay $300,000 when Phil Long converted to a competitor's product in March 2011.  (ECF No. 174 ¶ 48.)  JTS moves for summary judgment on this claim.  (ECF No. 412 at 14-15.)

JTS first argues that Phil Long purchased all of the required product before it changed suppliers.  However, JTS's argument here ignores the requirement that Phil Long buy $288,000 of product "*per year* over a period of five (5) years."  (BIA ¶ 4(b)(iii) (emphasis added).)  Like with JTS's annual purchase requirement discussed above, the Court cannot ignore the fact that the BIA set a minimum purchase requirement for each year.  The Court therefore finds that Phil Long's purchases before March 2011 did not excuse the requirement that it make a minimum annual purchase for the 2011 calendar year.

JTS also argues that DuPont cannot show that Phil Long converted to a competitor's paint line while the 2006 Shop Contract was in effect.  Therefore, JTS contends that any switch did not breach the BIA.  (ECF No. 412 at 14.)  Paragraph 3 of the BIA provides:

> Jobber entered into an agreement with Phil Long Collision Center . . . on or about [March 7], 2006 requiring Shop to solely use DuPont Performance Coatings products for its liquid paint requirements and to purchase all such DuPont Performance Coatings products from Jobber (the "Shop Contract").  In order to secure the Shop Contract, Shop required an incentive in the amount of Three Hundred Thousand Dollars ($300,000).  Therefore Jobber requested and DuPont has agreed that DuPont will make an

> investment in the amount of Three Hundred Thousand
> Dollars ($300,000) directly to Jobber (the "Investment") to
> reimburse Jobber for securing the Shop Contract.

(BIA ¶ 3.)  JTS contends that, because ¶ 3 of the BIA specifically references the 2006

Shop Contract, which was superceded by the 2009 Shop Contract, the BIA no longer

governed Phil Long's actions when it switched suppliers in 2011.  (ECF No. 412 at 14.)

Notably, JTS fails to cite any provision in the BIA which limits its enforceability to

the duration of the 2006 Shop Contract.  Rather, the BIA plainly sets minimum

purchase requirements for the next five calendar years, which suggests that the parties

understood their obligations under the agreement would extend for this duration.  (BIA

¶¶ 4(b)(iii) & 5.)  Moreover, nothing in ¶ 6 of the BIA, which DuPont alleges was

breached when Phil Long converted to a competitor's product, references the 2006

Shop Contract.  Thus, the Court cannot conclude that the remedies set forth in ¶ 6 of

the BIA were nullified when JTS renegotiated its shop contract with Phil Long in 2009.

Because DuPont has shown that Phil Long switched to a competitor's product

before December 31, 2011, it has shown a genuine dispute of fact as to whether JTS

was obligated to pay it $300,000 pursuant to ¶ 6 of the BIA.  As such, summary

judgment on this claim is not appropriate.

      2.    <u>2009 Empowerment Agreement</u>

DuPont alleges that JTS was required to pay it $100,000 under the 2009

Empowerment Agreement as a result of Phil Long changing paint lines.  (ECF No. 174

at 9.)  The relevant provisions of the 2009 EA appear in § 4 of the contract, and are as

follows:

      C.    Jobber must have a contract (hereinafter "Shop

Contract") with each end use customer (hereinafter "Shop") regarding the disposition of any Empowerment Dollars as an incentive in return for a commitment to exclusively use DPC liquid refinish paint products.  Each Shop Contract shall include the following:

. . .

4.      a liquidated damages provision in the event of breach by the Shop requiring the return of all incentive monies or other benefits provided to Shop; and

5.      A clause permitting Jobber to assign its rights and obligations in all Shop Contracts that are obtained with Empowerment Dollars to DuPont without the prior consent of the Shop.

D.      Jobber shall provide copies of all such contracts to DuPont.  Should a Shop breach its agreement with Jobber, any liquidated damages recovered will return to Jobber's fund of Empowerment Dollars so long as Jobber is otherwise in compliance with this Agreement and with the Champion Rules.

(ECF No. 414 at 3.)

It is undisputed that, after Phil Long changed paint lines, it paid JTS $390,000. (ECF No. 174 ¶ 60; ECF No. 186 ¶ 60.)  It is also undisputed that JTS has refused to give any of this money to DuPont.  (ECF No. 174 ¶ 61; ECF No. 186 ¶ 61.)  However, JTS argues that its refusal to pay any of the recovered money to DuPont is not a breach of contract and moves for summary judgment on this claim.  (ECF No. 412 at 17-21.)  In support of this aspect of its Motion, JTS argues: (1) that it did not use any monies provided under the 2009 EA to procure the 2009 Shop Contract, and (2) that the 2009 EA does not mandate return of the monies it received from Phil Long.

a. *Use of Empowerment Dollars to Procure Contract*

JTS argues that § 4(C) applies only to shop contracts that were procured using Empowerment Dollars as an incentive and that, because JTS did not use any Empowerment Dollars to obtain the 2009 Shop Contract with Phil Long, the 2009 EA was not breached when Phil Long changed to a competitor's paint line.  (ECF No. 412 at 18.)  DuPont disputes JTS's contention that the 2009 Shop Contract was not procured using Empowerment Dollars as an incentive.  (ECF No. 430 at 31.)

The Court finds that there is a genuine dispute of fact on this point.  JTS has provided evidence of two cancelled checks that were paid directly from JTS to Phil Long, one in March 2009 and the other in June 2009.  (ECF No. 412-19.)  A reasonable juror could rely on these checks to find that JTS paid Phil Long from its own funds.  However, DuPont has presented evidence showing that it made two $50,000 deposits into JTS's Empowerment Account—in April 2009 and August 2009—and the notations associated with these deposits reference JTS's contract with Phil Long.  (ECF No. 429-7.)  In reliance on this evidence, a reasonable juror could find that DuPont put this $100,000 into JTS's Empowerment Account to reimburse JTS the money it paid to secure the 2009 Shop Contract, such that § 4(C) of the 2009 EA was implicated.

b. *Repayment of Damages Received*

JTS also argues that its refusal to repay $100,000 of the money it recovered from Phil Long is not a breach because this money is not covered by § 4(D) of the 2009 EA.  (ECF No. 412 at 17.)

Section 4(D) provides: "Should a Shop breach its agreement with Jobber, any liquidated damages recovered will return to Jobber's fund of Empowerment Dollars so

12

long as Jobber is otherwise in compliance with this Agreement and with the Champion

Rules." JTS contends that this provision requires liquidated damages to be returned to

an Empowerment Dollars account only if such damages are recovered by DuPont. JTS

contends that, because it obtained the damages from Phil Long directly, it had no

obligation to return any monies to its Empowerment Dollars account. (ECF No. 412 at

17.) On the other hand, DuPont contends that § 4(D) requires that any liquidated

damages recovered from a shop be returned to the Jobber's Empowerment Dollars

account, regardless of whether the damages are recovered by DuPont or the Jobber.

(ECF No. 430 at 30.)

    "The primary goal of contract interpretation is to determine and effectuate the

intent and reasonable expectations of the parties." *Copper Mountain, Inc. v. Indus.*

*Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). "The intent of the parties to a contract is to

be determined primarily from the language of the instrument itself." *Bledsoe Land Co.,*

*LLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. App. 2011). "That language must be

examined and construed in harmony with the plain and generally accepted meaning of

the words used, and reference must be made to all the agreement's provisions." *Id*.

    The Court finds that both parties' positions are reasonably supported by the plain

language of the contract. Section 4(D) does not explicitly state that only those

liquidated damages recovered by DuPont must be returned to an Empowerment

Account; rather, the contract is silent as to what entity is recovering the monies. Had

the parties intended the 2009 EA to function as JTS suggests, they could have easily

added to § 4(D) the phrase "by DuPont" after "liquidated damages recovered" so that

the contract read: "any liquidated damages recovered [by DuPont] will return to

13

Jobber's fund of Empowerment Dollars".  The fact that this language does not appear in the 2009 EA suggests that the parties did not intend the provision to be so limited. Thus, the Court finds DuPont's construction of § 4(D) is reasonable.

However, the fact that the liquidated damages need only be returned if the Jobber's account is compliant with the other provisions of the Champion Program suggests that DuPont would be the party controlling return of the funds.  Additionally, JTS points out that only DuPont has the ability to deposit funds into a Jobber's Empowerment Dollars account.  (ECF No. 443 at 17-18.)  Given these facts, the Court finds that JTS's construction of § 4(D) is reasonable.

As both parties have put forth reasonable interpretations of the 2009 EA, the Court concludes that this provision is ambiguous.  *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 918 (Colo. 1996) ("A contractual provision is ambiguous when it is fairly suspectible of multiple interpretations.").  Therefore, whether § 4(D) obligates JTS to return $100,000 to DuPont is a question that must be resolved by the jury.  *See Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) (once a contract is determined to be ambiguous, its interpretation is generally a question of fact).

Accordingly, summary judgment is not appropriate on DuPont's counterclaim for breach of the 2009 EA.

**B.    Unjust Enrichment**

DuPont brings a claim for unjust enrichment in the alternative to its breach of contract claims.  (ECF No. 174 at 10.)  In a footnote, JTS moves for summary judgment on this claim.  (ECF No. 412 at 19 n.9.)  The entirety of JTS's argument is as follows:

14

"DuPont's claim for unjust enrichment fails because DuPont cannot establish that it gave JTS funds for the 2009 Contract with Phil Long.  Moreover, the 2009 Champion Contract governs the disposition of Empowerment funds, thus even if JTS used Empowerment funds for the 2009 Contract, DuPont's claim is barred as a matter of law."  (*Id.*)

Given the cursory manner in which this argument is made, the Court need not even address this aspect of the Motion.  The movant on a motion for summary judgment bears the initial burden of showing the absence of a dispute of material fact. *See Celotex*, 477 U.S. at 322-23.  Only if this initial burden is met does the burden shift to the non-movant to rebut this showing.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  The Court finds that JTS's argument in support of its Motion for Summary Judgment with respect to DuPont's unjust enrichment claim is insufficient to meet its initial burden.

Moreover, even if the Court considers the merits of the unjust enrichment claim, it finds that summary judgment is not appropriate.  A party pursuing contract claims may also pursue unjust enrichment claims in the alternative.  *See Lawry v. Palm*, 192 P.3d 550, 564 (Colo. App. 2008) ("A plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right under an enforceable contract.").  As set forth above, there are many open questions as to whether the contracts at issue govern the parties' conduct in this case.  If any aspect of JTS's conduct is determined to not be covered by a contract, the jury should then be permitted to consider DuPont's unjust enrichment claim as to that conduct.  As such, the Court denies JTS's Motion for Summary Judgment as to DuPont's unjust

enrichment claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Counterclaim Defendant's Motion for Summary Judgment on the Amended

Counterclaim (ECF No. 412) is DENIED; and

2.    Given the reduction in the claims at issue in this case, the 7 day jury trial set to

commence on December 8, 2014 is SHORTENED.  Trial REMAINS SET to

begin at 8:00 a.m. on December 8, 2014, but will continue for only **5 days**.  The

Final Trial Preparation Conference REMAINS SET for 2:00 p.m. on Friday,

November 21, 2014.

Dated this 30th day of July, 2014.

BY THE COURT:

William J. Martinez
United States District Judge